Good morning, Mr. Bellantoni. We have two minutes reserved for rebuttal. You can begin whenever you're ready. Yes, Your Honor. Thank you. Good morning and may it please the Court. My name is Rory Bellantoni. I represent the Plaintiff Appellants in this matter. The underlying I.D.A. proceeding, the impartial hearing officer found in favor of the parents. Upon review, State Review Officer Bates reversed the I.H.O. finding that there was no denial of fate. The District Court affirmed S.R.O. Bates and I maintain that was an error. Although the State Review Officer's opinion is long and is thorough in some respects, it is not in two. With respect to parent participation on page 15 of the decision, the S.R.O. discusses parent participation in a little more than a paragraph. Citing no case law, he comes to the same conclusion as the I.H.O. and then states, even assuming that the District took insufficient steps to ensure that the parents attended the August 2021 CSE meeting, this failure does not rise to the level of a denial of fate, given that the CSE was a reconvene and the parents actively participated in the March meeting at which the majority of the program recommended for the student was formulated. The I.H.O. recognized that. The I.H.O. said that the August reconvene pretty much mirrored the March IEP meeting, but nevertheless found the statute and New York State regulations require that the DOE give the parent the opportunity to participate in the meeting, which did not happen here. What the S.R.O. does not explain is why the I.H.O. was wrong. If nothing meaningful happened as it relates to what your challenges are, that wouldn't be sufficient, right? Just because it's some procedural violation doesn't mean in and of itself, it's not in and of itself sufficient, right? I'm not, I'm not sure that nothing meaningful. Well, they say the only thing that happened in August was that revisions were made to the recommendations regarding the student's assistive technology services, and you're not taking issue with that revision, right? Well, not necessarily, Your Honor, but the parents had a right to be present at the meeting to discuss that revision. There was also an intervening independent educational evaluation that took place in June that was funded by the City under State regulations. The CSE was required to consider it. That was not considered at the meeting. So the denial, the fact that in hindsight nothing meaningful or significant happened at the meeting, I would suggest is a slippery slope. So you argue in part about predetermination, and we see that a lot in IDEA cases. The idea that the school board has effectively already decided the placement in advance of the process. This kind of feels like, to coin a phrase, reverse predetermination, right? This is an instance where the parents had placed the child and had indicated their strong belief that I-BRAIN was the right place. And so, sort of, what new was going to happen that was going to change? Is it your perspective that if they had been able to participate in the August meeting, the school would have changed its mind and agreed that I-BRAIN was the right placement? Or that, because there's this argument about this particular school maybe not being right, or that perhaps the board would have changed its mind about which school in public education the student would have been placed in? What could have changed the situation here at that August meeting? I think this is part of the problem. Something may have changed, something may not. They may have offered, I can't say now if they had discussed the IEE with the school, that the school, the DOE, would not have offered to fund the education where it is. The point is, these conversations are very difficult to have in hindsight. The parents have a right to be there. And when the parents weren't at the meeting, the DOE should have rescheduled the meeting. Even the district court conceded that this meeting didn't take place at a mutual time and place and would be an error. But I'd also like to raise the SRO's rejection of the experts finding that this school, expert Rodriguez, who did the independent educational evaluation, again, the IHO and the SRO considered the same things. It seems that the SRO had a different opinion without explaining or justifying legally why the IHO was wrong and why the IHO's opinion warranted reversal. They explained that it was, that Dr. Rodriguez had conducted no observations of the classroom at the school, and it hadn't had, it was just based upon generalizations and hypotheticals that there was no basis for. So they did provide an explanation of why they concluded, right? At the bottom of page 26, Your Honor, I find the testimony of the neuropsychologist is rife with generalizations, unsupported hypotheticals about other classrooms, different years, safety concerns, and stereotypes of students with different disabilities. But what the expert said, this wasn't the parent's opinion that the DOE would not implement the IEP. This was an expert who was a DOE-certified expert who was familiar with the D-75 classes. Although the expert did not look at the actual classroom, it wasn't the classroom itself that posed a danger to this student. It was grouping this student with other students with dissimilar disabilities. This expert, in her expert opinion, who did see that this student, my client, when she conducted the IEE, said she's familiar with the D-75 population of autistic students, that these students with, and when S.R.O. Bates refers to stereotypes, what the expert referred to was stereotype movements. Autistic students have repetitive, seemingly purposeless movements that are a defining characteristic of the autism spectrum disorder. So it wasn't that the expert said, you know, there were stereotypes in a pejorative sense. These were classic features or symptoms of a person with ADD. And she opined that someone who's nonambulatory, nonverbal, is in a wheelchair, does not have an ability to defend themselves, that students in the classroom do pose a risk that they have behavioral issues, and the district's witness confirmed, not unsupported hypotheticals, confirmed that the majority of students in the 6-1 class are autistic. I don't understand. If she didn't observe, she had no specific information about these proposed classes, and you keep saying she was familiar with D-75 schools in general, but I think in the record, she had two years, hadn't visited any D-75 school. So again, why isn't that a sufficient basis to find that her view was not, she didn't carry a lot of weight? But I believe she said in her 15-year career, she was familiar, hadn't visited in the past two years, but was aware. But, Your Honor, insistent principle didn't contradict that testimony. She said, yes, the 6-1 class at Horan is a class for autistic students. Many of them have their own paraprofessionals, behavioral paraprofessionals, because they have behavioral issues. So the IHO heard the same evidence and found this was a denial of faith because the was not appropriate. SRO Bates, yes, he, again, what I read seems pretty general. He doesn't say what hypotheticals are unsupported. He doesn't talk about what generalizations he's talking about. It seems to me that the SRO shouldn't be able to replace his opinion for the IHO's. In this case, if the IHO hadn't found there was a denial of faith in the first instance, I understand the argument. All right. Thank you, Mr. Valenzuela. Thank you, Judge. Good afternoon. Good morning. I may please the Court. Chloe Moon on behalf of the City Appellees. Plaintiffs have never, including today, argued that the child's IEP was substantively inadequate. So here, procedural violations could only entitle plaintiffs to relieve if they affected the decision-making process. They didn't, and that should be an end to their challenge. Yes, Your Honor. Okay. Thank you. Plaintiffs' failure to attend the August meeting had no impact on their or the CSE's decisions related to the child's IEP, which had been developed in March and which only required a further assistive technology evaluation that the parents haven't challenged. Just to ask you a pointer question, maybe you don't know the answer. If, for some reason, the parents don't get notice of the media, they don't show up, is it the practice, like we're just going to go forward anyway, or to say, like, let's reschedule this seems to me to be the best practice to say, well, let's just go forward anyway? Yes, Your Honor. So I think there's a couple questions implied in that. I'm not sure that this Court should make any kind of bright-line rules about exactly how much notice is required. Here, though, there was notice a week in advance, and then they called and emailed day of. The testimony from the father is that he just didn't get on the call that day, AR 302. So it's not really clear what more DOE could have done in this case. But at bottom, it doesn't really affect the outcome here, because the parents were able to meaningfully participate in that March IEP that was already developed, and the placement had already been determined and told to the parents March and May, and the parents had already unilaterally placed the child in June at I-Brain. So the fact that they weren't able to attend this August meeting didn't affect their meaningful participation. And can parents request another meeting? Yes, I believe they can, Your Honor. I think just here, though, the purpose of this additional meeting was just for this very limited... But I mean, after they missed the August meeting, they did not request a further meeting? Correct, Your Honor. Yes. So what we think here on the procedural violations is that DOE made good-faith efforts, and the parents' failure to attend that August meeting didn't bear on the fundamental questions of the substantive adequacy of that IEP. I'd just quickly like to go to that IEE that my adversary discussed. Dr. Rodriguez's evaluation was actually created for a separate case, the prior proceeding. But in any event, it was retrospective and speculative. I'd just point the court to the line of cases R-E-M-O-J-C that says, basically, the kind of grouping analysis that Rodriguez used is inappropriately speculative and retrospective because the child had already been placed at that point. And that's the point you're supposed to be looking at, perspective challenges to placement. And then finally, just a quick point on the SRO deference here. The SRO's decision was thorough and careful. And so that requires this Court to defer to that thorough and careful analysis. And just as an example of that, I'd point the Court to A-37, which is the IHO's discussion of the procedural issues here as compared to the analysis that the SRO undertook on the procedural issues at A-65 to 67, which included statute and case law and further analysis. How about on the issue of Dr. Rodriguez? What was wrong with the IHO's reasoning with respect to Dr. Rodriguez versus the SRO? Yes. Again, I think it's a less thorough analysis. But specifically, it didn't look at, I think, if I'm remembering correctly, the kind of generalizations and the speculative nature of the retrospective evidence that she was relying on. Unless the Court has any further questions, we'd ask this Court to affirm. Thank you. You see, you still have plenty of time. But you never know until you're dying. Briefly, the type of retrospective evidence that this Court considered and discussed in R.E. was the district, the city, looking backwards at a hearing and saying, although certain services weren't in the IEP, we would have provided them had the student actually attended the classroom. It's much different than what happens here. In fact, in M.O., the Court discusses an example that it is not speculative to conclude that an IEP recommended a seafood-free environment for a child with a life-threatening seafood allergy could not implement at a proposed school that was not seafood-free. Now, you can say, well, that's speculation. We don't know the student's going to come in contact with seafood. We could always create a room that's safe for the student. But like the expert here, if the parents simply said the school was not safe for their child, I understand that would be speculative. But the expert here was hired to do an IEE, has credentials, is familiar with the school. The student said that this was in connection with another placement, that these findings were in connection with another placement. Is that correct? I know it was another case, but this was for the student's placement going forward. In other words, the district was ordered to pay for an IEE. It wasn't going to be used retroactively. This was the IEE to be used in creating the student's IEP and current program. I don't see how it matters that it's another case. It's the same DOE. The DOE paid for it. They were required to consider it. Can I ask you, Ms. Cook, Ms. Moon suggested that the record shows that the parents did get notification of that August meeting, and the father said, I just couldn't get it on the call. Your Honor, no, what happened was the parent didn't see an email. An email went to a junk box that was found subsequent to the meeting, and on the day of the meeting when the call was made, the father couldn't get on the call. But there was no attempt ahead of time to schedule the meeting at a mutually agreeable date. All right. Thank you to both of you. We'll reserve the decision. Have a good day. Thank you.